UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERROL LOUIS MARTIN,

                Petitioner,             Civil No. 4:13-CV-13830
                                            Honorable Linda V. Parker

v.

DUNCAN MACLAREN

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

      This is a habeas case under 28 U.S.C. § 2254. Petitioner Errol Louis Martin has filed a *pro se* petition challenging his convictions for first-degree child abuse and first-degree felony murder. Petitioner seeks habeas relief on the grounds that: (i) his attorney was ineffective for failing to call an independent expert in forensic pathology, and failing to challenge the admissibility of the prosecution's expert witness testimony; (ii) his right of confrontation was violated by limitations placed on cross-examination of witnesses; and (iii) the trial court erred in giving an instruction on flight that was unsupported by the evidence. Respondent has filed an answer arguing that Petitioner's Confrontation Clause claim is procedurally defaulted and that all of the claims are meritless. The Court denies the petition and denies a certificate of appealability.

## I.    Background and Procedural History

The Michigan Court of Appeals summarized the evidence adduced at trial leading to Petitioner's convictions as follows:

> Defendant's convictions arise from the July 10, 2008, death of 22-month-old Jaeshawn Profit, who was the son of defendant's intermittent girlfriend, Marquisha Profit.  Jaeshawn was found dead inside of defendant's house with second-degree burns and both internal and external bodily injuries.  Wayne County Assistant Medical Examiner Dr. Leigh Hlavaty found that there were three injuries to Jaeshawn that either individually or collectively caused his death: (1) blunt force trauma to the head; (2) blunt force trauma to the abdomen; and (3) scalding burns and swelling of the airway caused by steam inhalation.  Dr. Hlavaty testified at trial that Jaeshawn died within minutes of sustaining any of the three injuries.
>
> It was the prosecution's theory that defendant inflicted Jaeshawn's fatal injuries because defendant was the only person who had custody of Jaeshawn during the relevant period.  Defendant admitted to washing Jaeshawn with hot water, and hitting him twice on the backside.  The defense argued, however, that Marquisha had previously inflicted the fatal injuries, and that Jaeshawn was already dying when Marquisha left him in defendant's care. It was revealed during the preliminary examination that Marquisha had struck Jaeshawn on various occasions in the past. At trial, however, the trial court limited evidence of Marquisha's abuse of Jaeshawn to abuse during the 24-hour period preceding Jaeshawn's death based on Dr. Hlavaty's opinion that Jaeshawn died shortly after the fatal injuries were inflicted, and Marquisha was not with Jaeshawn at that time.  At trial, the defense did not offer expert testimony related to Jaeshawn's cause of death.

*People v. Martin*, No. 293703, 2012 WL 130417, *1 (Mich. Ct. App. Jan. 17, 2012).

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted

2

of first-degree felony murder and first-degree child abuse.  On June 10, 2009, he was sentenced to life imprisonment for the murder conviction and ten to fifteen years' imprisonment for the first-degree child abuse conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims: (i) counsel was ineffective for failing to call an independent expert in forensic pathology; (ii) counsel was ineffective in failing to challenge the admissibility of the prosecution's expert witness testimony; (iii) the trial court violated Petitioner's right to confrontation by placing restrictions on his cross-examination of Marquisha Profit and other witnesses; and (iv) the trial court erred in instructing the jury on flight when the evidence did not support such an instruction.  Petitioner also filed a motion to remand to allow defense counsel to file a motion for new trial based upon the ineffective assistance of counsel claims.  The Michigan Court of Appeals granted Petitioner's motion to remand.  The trial court conducted an evidentiary hearing and then denied the motion for a new trial.  12/6/10 Order Denying Motion for New Trial, *People v. Martin*, No. 08-014328-01-FC.   The Michigan Court of Appeals then affirmed Petitioner's convictions.  *Martin*, 2012 WL 130517 at *7.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.  He raised the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Martin*, 491 Mich. 945

(Mich. June 25, 2012).

Petitioner then filed the pending habeas petition.  He raises these claims:

I.      In a case that pivoted upon questionable expert testimony, Martin received ineffective assistance of counsel when his trial lawyer failed to call an independent expert in forensic pathology.

II.     In a case that pivoted upon questionable expert testimony, Martin received ineffective assistance of counsel when his trial lawyer failed to challenge the admissibility of that testimony under Mich. R. Evid. 702.

III.    The trial court deprived Martin of his constitutional rights to confrontation and to present a defense when it placed undue restrictions on his cross-examination of Marquisha Profit and other witnesses.

IV.     The trial court deprived Martin of his constitutional right to a fair trial when it gave an objected-to instruction on flight where the evidence did not support that instruction.

## II.    Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against

extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court

6

factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.   Discussion

### A.    Ineffective Assistance of Counsel Claims

Petitioner raises two ineffective assistance of counsel claims.  He argues that counsel was ineffective in failing to call an independent expert in forensic pathology and in failing to challenge the admissibility of the prosecution's expert witness testimony.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

### 1.    Counsel's Failure to Call Independent Expert Witness

The Michigan Court of Appeals granted Petitioner's motion to remand for an evidentiary hearing on Petitioner's claim that counsel was ineffective in failing to call an independent expert witness.  On remand the trial court conducted a two-day evidentiary hearing.  The defense presented an expert witness, Dr. Ljubisa Dragovic, and Petitioner's trial attorney, Marvin Barnett.  The prosecution presented two expert witnesses, Dr. Hlavaty and Dr. Michael Caplan.

### a.    Dr. Hlavaty's trial testimony

First, the Court reviews the expert testimony presented at trial by the prosecution.  Dr. Leigh Hlavaty, a medical examiner for the Wayne County Medical

8

Examiner's office, testified that she performed the autopsy on Jaeshawn. She testified that, her external examination of Jaeshawn, revealed at least 78 bruises that were inflicted within 24 hours of his death. Her internal examination revealed these injuries: subdural hemorrhages on both sides of the brain, a subarachnoid hemorrhage on the right front side of the brain, swelling and herniation of the brain, steam burns to the airways, eight broken ribs, a nearly completely transected liver, crushed right adrenal gland, torn right kidney, and bruising of the bowels. Dr. Hlavaty concluded that the head injuries were caused by at least seven separate blows to Jaeshawn's head, inflicted with a great deal of force. Dr. Hlavaty testified that the head injuries, by themselves, would have caused death within a few minutes. She further testified that Jaeshawn's abdominal injuries, his torn liver and kidney, and crushed adrenal glands, by themselves, would have caused death within a few minutes. Dr. Hlavaty also noted that Jaeshawn suffered severe steam burns to his airway, which would have caused swelling. The burns were so severe that, eventually, the airway would swell to the point where he would suffocate and die. It could take anywhere from a few minutes to as long as an hour for the airway to swell so completely that Jaeshawn would have been unable to breathe. Dr. Hlavaty was unable to determine the order in which the injuries were inflicted, but she was able to determine that Jaeshawn was alive at the time the head, airway, and abdominal injuries were inflicted.

### b.      State court evidentiary hearing

Dr. Ljubisa Dragovic testified that he is the chief medical examiner, chief forensic pathologist, and consulting neuropathologist for Oakland County.  He was qualified as an expert in forensic pathology and neuropathology.  In preparing for his testimony, he reviewed the autopsy report prepared by Dr. Hlavaty.  Dr. Dragovic testified that Dr. Hlavaty's autopsy was not performed in accordance with standards established by the National Association of Medical Examiners because Dr. Hlavaty did not undertake a microscopic examination of tissue.  Dr. Dragovic testified that tissue sampling would have allowed the examiner to narrow the interval when the injuries occurred.   Dr. Dragovic believed Jaeshawn's brain injuries were approximately 36-hours old at the time of Jaeshawn's death.  Dr. Dragovic also testified that the autopsy report lacked sufficient photographic documentation.  No photographic evidence supported the report's conclusion that there was damage to the adrenal glands and right kidney.  Dr. Dragovic concurred in the opinion that Jaeshawn suffered  serious injuries to his internal organs, but opined that the injuries were several hours old.  He flatly contradicted Dr. Hlavaty's conclusion that Jaeshawn suffered steam inhalation injuries that independently could have caused his death.  He found no basis for Dr. Hlavaty's conclusion in the autopsy report or photographs.

Marvin Barnett testified that he represented Petitioner during the criminal trial.

10

Barnett testified that his trial strategy was to create reasonable doubt as to whether or not Petitioner caused the death of Jaeshawn.  Barnett attempted to do this by pointing out that Jaeshawn's mother may have caused the injuries that killed Jaeshawn and trying to show that Jaeshawn's injuries were inflicted over a sustained period of time. He explained that he did not consult an independent forensic pathologist because he feared doing so would harm his client.  He explained that Petitioner had told him that he had gotten upset with Jaeshawn's mother because she was with another man and that, in his frustration, he stomped and beat Jaeshawn.

Dr. Hlavaty testified for the prosecution.  She disagreed with Dr. Dragovic's statement that she failed to comply with the National Association of Medical Examiners' standards because she did not conduct a microscopic examination of tissue samples taken from Jaeshawn's skin or internal organs.  Dr. Hlavaty testified that the National Association of Medical Examiners' requires microscopic tissue examination only where there is no gross anatomic cause of death unless the remains are skeletonized.  Dr. Hlavaty found several gross anatomic findings and concluded that no microscopic examination of the organs was therefore required.  She also testified that the standards do not require photographic evidence of internal injuries.

Dr. Michael Caplan testified that he is a board-certified physician in anatomic and clinical pathology, forensic pathology, and pediatric pathology.  He conducted an

independent evaluation in this case, and, in doing so, reviewed the autopsy report, records from the Detroit Medical Center Children's Hospital, a police investigation report, and Dr. Dragovic's report. Dr. Caplan prepared a two-part report. The first part summarized his opinions regarding the cause of Jaeshawn's death and the timing of the injuries. The second, responded to Dr. Dragovic's report. Dr. Caplan concluded the cause of death to be multiple blunt force injuries to the head, torso and extremities. He concluded that the brain injuries occurred anywhere from minutes to several hours before Jaeshawn's death. Dr. Caplan concluded that Jaeshawn's liver injury, which by itself would have been fatal, occurred minutes to hours before Jaeshawn's death, though Dr. Caplan favored an estimate closer to minutes based upon the severity of the transection. Dr. Caplan disagreed with Dr. Dragovic's conclusion that Dr. Hlavaty violated professional standards. Dr. Caplan also pointed out some inconsistencies in Dr. Dragovic's report concerning when the brain injuries likely occurred.

Following the evidentiary hearing, the trial court issued a written opinion detailing the testimony adduced at the hearing, finding no ineffective assistance of counsel, and denying the motion for a new trial. 12/6/2010 Order Denying Motion for New Trial, *People v. Martin*, No. 08-014328-01-FC. The matter was then returned to the Michigan Court of Appeals for Petitioner's appeal of right.

12

### c.    Michigan Court of Appeals' decision

The Michigan Court of Appeals held that Petitioner failed to overcome the

presumption that his attorney was effective:

> At the evidentiary hearing, trial counsel explained that his decision not
> to consult with an independent forensic pathologist was a tactical choice,
> primarily based on admissions that defendant had made to him at the
> outset.  According to trial counsel, defendant reported that he was upset
> because he loaned Marquisha his car, she was not answering his
> telephone calls, and he later learned that she was actually with another
> man while he had custody of her son, Jaeshawn.  After smoking some
> marijuana, defendant took his feelings out on Jaeshawn. Defendant told
> counsel that as Jaeshawn was on the floor, he stomped on him with his
> foot and beat him with his fists.  Counsel was aware that defendant had
> sole custody of the child for a "considerable period of time."  Given the
> information about defendant's actions and custody of Jaeshawn, counsel
> decided to forego consulting with an independent expert because of his
> concern that the witness might actually support the prosecution's theory
> that defendant positively caused the fatal injuries.  Instead, counsel
> crafted a strategy of demonstrating reasonable doubt by showing that
> Marquisha had hit Jaeshawn earlier that day as he sat in his car seat,
> thereby showing that Marquisha might have caused the child's fatal
> injuries.  Counsel did, in fact, make those arguments at trial.

> The trial court found trial counsel's testimony regarding defendant's
> admissions and his reasons for proceeding as he did to be credible.
> Considering the trial court's superior ability to judge the credibility of
> witnesses who appear before it, we defer to the trial court's conclusion
> that trial counsel's version of events was believable and that defendant
> made the unfavorable admissions to counsel.  *See* M.C.R. 2.613(C);
> *People v. Sexton*, 461 Mich. 746, 752; 609 NW2d 822 (2000).  Indeed,
> there is nothing to contradict trial counsel's testimony.  Accepting trial
> counsel's testimony as true, defendant admitted to gravely harming
> Jaeshawn, and an independent forensic expert could have very well been
> detrimental to the defense.  It is clear from trial counsel's questions,
> remarks, and arguments throughout trial that he consistently and

vigorously sought to inject reasonable doubt by arguing that Marquisha might have caused the child's fatal injuries.

To the extent that defendant claims that trial counsel's approach was misguided and not successful, nothing in the record suggests that trial counsel's strategy was unreasonable or prejudicial under the circumstances.  Counsel's decisions about what witnesses to call and what evidence to present were matters of trial strategy.  *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999).  This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight.  *People v. Rice* (On Remand), 235 Mich.App 429, 445; 597 NW2d 843 (1999). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v. Stewart* (On Remand), 219 Mich.App 38, 42; 555 NW2d 715 (1996).  Defendant has not overcome the strong presumption that counsel's decision was based on objectively reasonable trial strategy.

*Martin*, 2012 WL 130417 at *3.

14

### d.    Application of *Strickland* Standard

The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor an unreasonable application of, Supreme Court precedent or federal law. Petitioner is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Although some attorneys may have called an expert witness to testify, that is not the test for habeas review.  The Supreme Court has stated that there are "countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Harrington*, 131 S. Ct. 770 at 789 (2011). "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 131 S. Ct. at 791.  Often, "cross-examination will be sufficient to expose defects in an expert's presentation." *Id.*  Here, counsel's cross-examination of the expert witness indicates capable advocacy.  Petitioner has failed to demonstrate that his counsel's representation fell below the reasonableness

15

standard set forth in *Strickland*.

### 2.      Failure to Challenge Admissibility of Dr. Hlavaty's Testimony

Petitioner argues that counsel was also ineffective in failing to challenge the admissibility of Dr. Hlavaty's testimony on the ground that the admission of her testimony violated both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Michigan Rule of Evidence 702.  The Michigan Court of Appeals held that Dr. Hlavaty's testimony was properly admitted, holding, in pertinent part:

> [T]here was no dispute that Dr. Hlavaty was a qualified expert. Rather, the focus of defendant's claim is that Dr. Hlavaty's scientific findings regarding the post-injury survival interval were not based on sufficient and reliable facts, chiefly because she failed to perform microscopic (histological) examinations on the central nervous systems as well as other various parts of Jaeshawn's body.  At the evidentiary hearing, Dr. Dragovic and Dr. Caplan both testified that they would have performed microscopic examinations in this case, and agreed that such an examination provides a more accurate estimate of the post-injury survival interval. But contrary to what defendant argues, a microscopic examination was not mandatory.  In specific, Standard G-27 of the standard autopsy protocol set forth in the National Association of Medical Examiners ("NAME") states:
>
> > Histological examination may reveal pathologic changes related to the cause of death.  The forensic pathologist shall perform histological examination in cases with *no* gross anatomic cause of death unless the remains are skeletonized." [Emphasis added by Michigan Court of Appeals.]

16

All three experts agreed that this case involved a gross anatomic cause of death. As a result, both Dr. Hlavaty and Dr. Caplan testified that a microscopic examination was not required here. Dr. Caplan further specifically disagreed with Dr. Dragovic's opinion that Dr. Hlavaty's failure to conduct a microscopic examination fell below the NAME standards. The failure to perform a microscopic examination would not have supported suppression of Dr. Hlavaty's testimony under MRE 702, and accordingly, defendant cannot establish a claim of ineffective assistance of counsel on this basis.

*Martin*, 2012 WL 130417 at *5.

Petitioner's reliance on *Daubert* is misplaced. "*Daubert* concerned the Federal Rules of Evidence which is not relevant to" the petitioner's conviction. *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998). Therefore, *Daubert* cannot provide a basis for habeas relief.

Petitioner also argues that admission of Dr. Hlavaty's testimony violated Michigan Rule of Evidence 702. Habeas courts "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008), quoting *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). Because the state court held that the testimony was properly admitted under state law, Petitioner cannot show that his attorney was ineffective for failing to challenge the admissibility of Dr. Hlavaty's testimony under Mich. R. Evid. 702. Habeas relief is denied on this claim.

17

### B.    Confrontation Clause Claim

Petitioner next argues that his right to confrontation was violated when the trial court limited cross-examination of Marquisha's history of abusing Jaeshawn to the 24-hour period preceding his death.  Respondent argues that this claim is procedurally default because no objection on Confrontation Clause grounds was raised at trial.  The Court finds that judicial economy is best served by addressing the merits of this claim rather than the procedural default issue.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

The Michigan Court of Appeals found no plain error in the limitation:

> At the preliminary examination, Marquisha testified that she "pop[s]" Jaeshawn, and had whipped him with a belt in the past.  Defendant's stepfather testified that he observed Marquisha strike Jaeshawn at various times on several occasions in the past.  In addition, in defendant's statement, he made references to abuse inflicted by Marquisha during the several days before Jaeshawn's death.

> Although a defendant has a constitutional right to present a defense and to confront his accusers, U.S. Const, Am VI; Const 1963, art 1 § 20; *People v. Adamski*, 198 Mich. App 133, 138; 497 N.W.2d 546 (1993), he must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict.  *See People v. Hayes*, 421 Mich. 271, 279; 364 N.W.2d 635 (1984); *People v. Arenda*, 416 Mich. 1, 8; 330 N.W.2d 814 (1982).  In this case, the trial court did not preclude defendant from presenting all evidence that Marquisha had abused Jaeshawn, but rather precluded admission of past acts that were not relevant to the charges against defendant.  The only medical evidence before the court at the time of the motion and trial established that Jaeshawn's bruises were inflicted within 24 hours before his death, that he died from blunt force trauma to the head,

18

blunt force trauma to the abdomen, and steam inhalation, and that the post-injury survival interval was a period of minutes. Given the ages of the bruising, the cause of death, and the post-injury survival interval, defendant did not establish that Marquisha's various past acts of striking Jaeshawn had any tendency to make his culpability in inflicting the fatal injuries more probable or less probable than it would be without the evidence. M.R.E. 401; *Yost*, 278 Mich. App at 355. Because defendant was unable to establish the relevancy of the proposed evidence, the trial court did not abuse its discretion by excluding it. The trial court did not preclude defendant from otherwise presenting a defense and challenging Marquisha's credibility, and permitted defendant to present evidence that Marquisha beat Jaeshawn within the 24 hours preceding his death and cross-examine her at length about that abuse. Accordingly, the trial court's decision to exclude unrelated abuse did not fall outside the range of reasonable and principled outcomes, and that decision did not deprive defendant of his rights of confrontation or to present a defense.

*Martin*, 2012 WL 130417 at *6.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Pointer v. Texas*, 380 U.S. 400, 405 (1965), *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965). While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."

19

*United States v. Scheffer*, 523 U.S. 303, 307 (1998).  Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process."  *Id.* (internal quotations omitted).  However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused."  *Id.*, *citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

The Michigan Court of Appeals' denial of Petitioner's claim was reasonable. The state court properly weighed the State's interest in not having this evidence admitted against Petitioner's ability to present a defense absent this evidence.  The state court reasonably concluded that evidence that Jaeshawn's mother previously abused him was irrelevant when the expert witness testified that the injuries that caused Jaeshawn's death were inflicted within twenty-four hours prior to his death. In addition, as the Michigan Court of Appeals' noted, defense counsel cross-examined Marquisha extensively and through this cross-examination was able to question her credibility, care-taking ability, and potential culpability.  The state court of appeals reasonably rejected this claim and habeas relief is denied.

### C.    Jury Instruction Claim

Finally, Petitioner argues that the trial court erred in instructing the jury on

flight because the evidence did not support that instruction.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas relief lies for a jury instruction claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process." *Id.* quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

The Michigan Court of Appeals held that the instruction was supported by the evidence. The court of appeals relied on these facts in reaching this conclusion: Petitioner left the scene as emergency personnel were tending to Jaeshawn and did not return for several days; Officer Jiminez's testimony that Petitioner tried to flee during an interview at the police station. The court of appeals also reasoned that Petitioner's ultimate voluntary surrender did not negate the inferences that Petitioner was initially trying to avoid detection by staying away from his own home. *See Martin*, 2012 WL 130417 at *7.

The Sixth Circuit has rejected habeas corpus challenges to the very instruction given in this case, at least when there was some evidence of flight or hiding. *Burton v. Renico*, 391 F.3d 764, 778-79 (6th Cir. 2004). The Court finds

that the instruction did not "'so infect[ ] the entire trial that the resulting conviction violates due process.'"  *See Estelle*, 502 U.S. at 72.  The trial court instructed the jury that evidence that the petitioner hid from police did not necessarily prove guilt because people may flee or hide for innocent reasons.  There is no basis to believe that the instruction had "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1995). Therefore, Petitioner is unable to establish that this instruction deprived him of a fair trial, and he is not entitled to habeas relief on this claim.

## IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.  Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part:  "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604

22

(2000).  If a petitioner makes the requisite showing and a district court grants a

certificate of appealability, the court must indicate the specific issue or issues for

which the applicant made a substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(3).

For the reasons stated in this Opinion and Order, the Court finds that

Petitioner has failed to make a substantial showing of the denial of a constitutional

right.  Therefore, a certificate of appealability shall not issue in this case.

## V.      Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of

habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 10, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, May 10, 2016, by electronic and/or U.S.
First Class mail.

S/ Richard Loury
Case Manager